OPINION OF THE COURT
Joseph C. Teresi, J.
Plaintiffs in this case seek a declaratory judgment as well as preliminary and permanent injunctive relief against the defendants pursuant to CPLR 3001, 3017 (b); 6301 and 6311, article III of the New York Constitution and article I (§ 8, cl [3]) of the United States Constitution. Defendants oppose the motions with the exception of not opposing the motion to intervene.
Plaintiffs’ initial argument is that the defendants, in promulgating regulations under the Security Guard Act of 1992 (General Business Law art 7-A) (Act) have attempted to expand the scope of the Act to include armored car carriers; and that this expansion is in direct intervention of the plain wording of the statute, prior common law and the Legislature’s intent to exclude armored car carriers.
Before reaching any argument as to common law or legislative intent this court will first examine the statute itself. At issue is General Business Law § 89-f (6):
" 'security guard’ shall mean a person employed by a security guard company to principally perform one or more of the following functions within the state:
"a. protection of individuals and/or property from harm, theft or other unlawful activity;
"b. deterrence, observation, detection and/or reporting of incidents in order to prevent any unlawful or unauthorized activity including but not limited to unlawful or unauthorized intrusion or entry, larceny, vandalism, abuse, arson or trespass on property.”
Defendants maintain that a plain reading of the definition indicates that the Act may be applied to armored car carriers. Plaintiff and interveners maintain that the statute is ambiguous at best and makes no reference to armored car carriers. This court is mindful of the previous case law that states "where statutory language is clear and unambiguous, this court in interpreting a statute will give effect to the words used by a coequal branch of government, unless 'such applica *567 tion would cause an anachronistic or absurd result contrary to the contextual purpose of the enactment’ ” (People v Boston, 75 NY2d 585, 588 [1990]). However, the courts have not foreclosed review of a statute for a lack of unambiguity. Rather the courts have stated that: "[w]hile the statutes may appear literally 'unambiguous’ on their face, the absence of ambiguity facially is never conclusive. Sound principles of statutory interpretation generally require examination of a statute’s legislative history and context to determine its meaning and scope.” (New York State Bankers Assn. v Albright, 38 NY2d 430, 434 [1975].)
Nonetheless, this court does find the Security Guard Act of 1992 unambiguous, therefore the court will examine the legislative as well as common-law history.
Article 7 of the General Business Law after a 1945 amendment (L 1945, ch 625, § 2) defined "[w]atch, guard or patrol agenc[ies]” as: "including], separately or collectively, the furnishing, for hire or reward, of watchmen or guards or private patrolmen or other persons to protect persons or property or to prevent the theft or the unlawful taking of goods, wares and merchandise * * * money, bonds, stocks, choses in action, notes or other valuable documents, papers, and articles of value, or to procure the return thereof or the performing of the service of such guard or other person for any of said purposes.”
Following the 1945 amendment, Brink’s (as well as two other plaintiffs) brought a declaratory judgment action challenging the State Department’s attempt to apply the article to the armored car carriers industry. In that case the court held: "The provisions of the statute are too long to be reproduced here. But it seems to me plain that they are wholly inappropriate and insufficient to show an intention on the part of the Legislature to subject such a business as plaintiffs are conducting to the license taxes and other burdens imposed by the act on private detectives and investigators or on persons engaged in the 'business of watch, guard or patrol agency’. Such interference with, or restrictions upon, a legitimate private business must not be sanctioned unless the legislative purpose to exercise such control is perfectly clear.” (Brink’s, Inc. v Curran, 187 Misc 639 [Sup Ct, NY County 1946], affd without opn 273 App Div 881 [1st Dept 1948].)
Because the legislative purpose was held not to be perfectly clear with respect to article 7, the court in Brink’s, Inc. v *568 Curran (supra) found that Brink’s was not required to comply with the regulatory and licensing requirements of that statute. This decisional interpretation has remained for nearly 50 years, until the enactment of article 7-A of the General Business Law (the Security Guard Act of 1992). At which time defendants advised petitioners that they were subject to the regulations of said Act.
Defendants maintain that the legislative history of the Act first, should not be considered and second, does not evince an intention by the Legislature to exclude the armored car carriers industry from the Act. This court is not convinced that the legislative history supports that argument. The history of the Act begins with the Curran decision (supra) where the court stated "[s]uch interference with, or restrictions upon, a legitimate private business must not be sanctioned unless the legislative purpose to exercise such control is perfectly clear.” (Brink’s, Inc. v Curran, supra, at 640.) In light of that decision the armored car companies have not been licensed since 1946.
Beginning in the 1980’s, and culminating in 1989, the need to regulate the security guard industry became apparent to the Legislature as well as others. Legislation to license and regulate the security guard industry was introduced in the New York State Senate during the 1989-1990 legislative session. Hearings were held and a report was issued by the Senate Standing Committee on Crime and Correction. At that time the armored car carrier companies were not the subject of this legislation.
During those hearings Secretary of State Shaffer testified that with regard to armored car carrier companies: "[t]hese companies have not been licensed since 1946 when the courts determined that they were not subject to licensing laws. There’s been no information made available to us that would suggest there are significant abuses in those services that necessitate regulation, and frankly, that’s probably because of similar internal checks they have because of the large amounts of money that are being dealt with, and the bonding requirements they have.” (Committee Hearings, at 17-18.)
Also, in the history of the Act was the proposed security guard legislation which passed the Senate in 1990. (NY Senate Bill S 5827-A.) That proposed bill (it is undisputed) would have covered the armored car industry. Specifically that bill in its provisions defined a "private security guard” as follows:
*569 " 'Private security guard’ shall mean an individual employed by a security guard company to principally perform one or more of the following functions:
"a. protection of individuals and/or property from harm or theft;
"b. prevention, observation or detection of any unlawful or unauthorized intrusion, entry, activity, larceny, vandalism, abuse, arson or trespass on private property;
"c. control, regulation or direction of the flow or movements of the public;
"d. street patrol service;
"e. transportation of currency, jewelry, securities, works of art or other valuables in a specially equipped motor vehicle which offers a high degree of security; and
"f. response to but not installation of service of a security system alarm installed and/or used to prevent or detect unauthorized intrusion, robbery, burglary, theft, pilferage, and other losses and/or to maintain security of a protected premises.”
In response to this inclusion the armored car carrier industry raised concerns and contacted Senator Mega, author and sponsor of the bill. In response to those concerns and on behalf of Senator Mega, Richard Olsen, the Executive Director of the Judiciary Committee, responded by letter which represented that armored car services had been removed from the bill. That decision was apparently reached after lengthy review and discussion.
Subsequently on February 10, 1992, Senator Mega reintroduced the Security Guard Bill in the New York State Senate. At the time of its passage and enactment into law, the Act was identical to its 1990 predecessor in its definition of "security guard” with no mention of the armored car carrier industry. The final version also instructed the Secretary of State to adopt regulations including "criteria for determining whether a person is a security guard or whether a particular function is a security guard function as defined by subdivision six of section eighty-nine-f of this article” (General Business Law § 89-o). In interpreting the Act the Secretary of State decided that it applied to armored car guards. This court disagrees, and finds that conclusion irrational and unsupported by the legislative history.
In Brink’s, Inc. v Curran (supra) the court stated that if the *570 Legislature wanted to include armored car carriers it should make that intention clear. The Legislature did that with its early version of this Act but upon request of the industry and after lengthy review and discussion that inclusion was removed. Defendant would have this court believe that contrary to the Secretary of State’s own testimony as well as Mr. Olsen’s letter on behalf of the Senate Judiciary Committee the armored car carrier companies were subject to this Act. Defendants argue that the letter to the armored car industry was a clever type of subterfuge engaged in by the Senate to placate the industry. This court finds the scope of the Act, the problem it was meant to address and the intent of the Legislature are clear. The Security Guard Act of 1992 was not intended to cover the armored car carrier industry and should not be applied to that industry.
The court further notes the introduction of a 1993 bill regarding armored vehicle transports containing, among other things, a provision for licensure of said companies. Had the proponents of said legislation considered that the Security Guard Act of 1992 applied to the armored car carrier industry, those requirements would not have been necessary. Therefore the motion for declaratory relief is granted.